**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**   05 JUL 11  PM 12: 12

|  |  |
|---|---|
| ERICA HARZEWSKI, Individually and On Behalf of All Other Similarly Situated, | : : |
| Plaintiff, | Civil Action No. : |
| vs. | **COMPLAINT – CLASS ACTION** : : |
| GUIDANT CORPORATION, RONALD W. DOLLENS, JAMES M. CORNELIUS, MAURICE A. COX, NANCY-ANN MIN DEPARLE, ENRIQUE C. FALLA, MICHAEL GROBSTEIN, KRISTINA M. JOHNSON, J.B. KING, J. KEVIN MOORE, MARK NOVITCH, JACK A. SHAW, EUGENE L. STEP, RUEDI E. WAGER AUGUST M. WATANABE, and UNKNOWN FIDUCIARY DEFENDANTS 1-100, | : : : : : : : : : : : : : |
| Defendants. | : : |

1:05-cv-1009-LJM-TAB

**CLASS ACTION COMPLAINT FOR BREACHES OF**
**FIDUCIARY DUTY UNDER THE**
**EMPLOYEE RETIREMENT INCOME SECURITY ACT**

Plaintiff Erica Harzewski ("Plaintiff"), a participant in the Guidant 401(k) Profit Sharing Plan

(the "401(k) Plan") and Employee Stock Ownership Plan (the "ESOP") (collectively, the "Plans") at

all times relevant to this action, on behalf of herself and a class of all others similarly situated,

alleges as follows:

## INTRODUCTION

This is a class action brought pursuant to §502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1132, against fiduciaries of the Plans, including Guidant Corporation ("Guidant" or the "Company").

1.      401(k) plans, governed under ERISA, confer tax benefits on participating employees to incentivize saving for retirement and/or other long-term goals. Employee Stock Ownership Plans ("ESOPs"), also governed under ERISA, are designed to function as both an employee retirement benefit pan and a mechanism of corporate finance that encourages employee ownership. Consideration paid into ESOPs are typically in the form of stock of the company. The assets of an ESOP are held in a trust under the control of fiduciaries.

2.      Plaintiff Harzewski was an employee of Guidant and a participant in the Plans during the Class Period alleged herein. Her retirement investment portfolio included substantial amounts of Guidant common stock.

3.      Plaintiff alleges that Defendants, as fiduciaries of the Plans, breached their duties to her and to the other participants and beneficiaries of the Plans during the Class Period in violation of ERISA, particularly with regard to the Plans' holdings of Guidant common stock.

4.      Guidant is the sponsor of the Plans. As noted above, both the 401(k) Plan and the ESOP permit participants to save for retirement. While the 401(k) Plan does not permit employee contributions to be invested in Company stock, Guidant makes its matching contributions in Company stock. In addition, Guidant makes all Company fixed contributions to the ESOP in Company stock. These matching and fixed contributions are made to the ESOP. Thus, while no 401(k) Plan investments are in Guidant stock, the employer matching portions of employee

2

contributions into the 401(k) Plan are made in Guidant stock, and thus, for the purposes of this action, participants in both the ESOP and 401(k) Plan have been injured by Defendants' long-standing breaches of their fiduciary duty described herein.

5. Since all ESOP holdings, which includes both Company matching and fixed contributions, are in Guidant stock, these assets comprised a substantial portion of the overall value of the assets held by the Plans during the Class Period, and thus, the long-term retirement savings of participants in the Plans were dependent to a material degree on the performance of Guidant common stock, as well as the related need for prudent fiduciary decisions by Defendants concerning such a large, ongoing investment of Plan assets.

6. During the Class Period, as described herein, Defendants knew or should have known that Guidant stock was an imprudent investment alternative for the Plans due to the material risks the Company faced as early as three years ago regarding design and/or manufacturing defects and problems with ever-increasing numbers of the Company's cardiac defibrillators -- problems which were never disclosed at all to physicians or adequately disclosed to regulators, despite the substantial risks of death these defective defibrillators posed for patients implanted with them. Upon information and belief, these material adverse facts were known or should have been known to the Defendants in their capacity as senior executives and/or directors of the Company over this multi-year period.

7. This action alleges that the Defendants, as fiduciaries of the Plans, breached their fiduciary duties to the Plans and their participants under ERISA, by, among other things, selecting and maintaining Guidant stock as the investment alternative for Company matching contributions

3

under the 401(k) Plan when they knew or should have known that it was no longer a suitable or prudent Plan investment option.

8.     In addition, the fiduciaries of the ESOP breached their fiduciary duties to plan participants by failing to take appropriate steps to mitigate damages to Plan participants in acquiring new, and/or continuing to hold existing Guidant stock as Company fixed contributions, based on what these fiduciaries knew or should have known regarding the problems the Company continued to face in connection with ever-increasing numbers of its defibrillators, the resultant health risk faced by patients, and the concomitant artificial inflation of the value of Guidant stock during the Class Period.

9.     The breaches alleged herein were ongoing and continuous over the course of the Class Period, and arose out of, *inter alia,* Defendants' continuing duty to review, evaluate, and monitor the suitability of making Company matching and fixed contributions in Guidant stock.

10.     As a result of Defendants' fiduciary breaches, as hereinafter enumerated and described, the Plans have suffered substantial losses; with millions of dollars of the retirement savings and anticipated retirement income of the Plan participants having been lost. Under ERISA, the breaching fiduciaries are obligated to restore to the Plans the losses resulting from these breaches of fiduciary duty.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and ERISA §502(e)(1), 29 U.S.C. §1132(e)(1).

12.     Venue is proper in this district pursuant to ERISA §502(e)(2), 29 U.S.C. §1132(e)(2), because the Plans were administered in this district, some or all of the fiduciary breaches for which

4

relief is sought occurred in this district, and/or some Defendants reside or maintain their primary place of business in this district.

## PARTIES

### Plaintiff

13.    Plaintiff Harzewski worked for Guidant, and was a participant in the Plans pursuant to §3(7) of ERISA, 29 U.S.C. §1102(7) and held and/or acquired Guidant common stock in her retirement investment portfolio during the Class Period.

### Defendants

14.    Defendant Guidant Corporation ("Guidant" or the "Company") is an Indiana corporation with its principal executive offices located at 111 Monument Circle, 29th Floor, Indianapolis, IN 46204. According to the Company's 2003 Form 10-K, Guidant provides therapeutic medical solutions for customers, patients and healthcare systems around the world.

15.    Guidant is the Sponsor of the Plans. Moreover, Guidant is a fiduciary of the Plans within the meaning of ERISA. Guidant, through its Board of Directors, senior officers and employees, exercises discretionary authority with respect to management and administration of the Plans and/or management and disposition of the Plans' assets.

16.    Guidant at all times acted through its officers and employees, including its Plan Administrator(s), and other the fiduciaries responsible for the administration of the 401(k) Plan and ESOP, who were appointed by the Board of Directors of the Company to perform Plan-related fiduciary functions, and did so in the course and scope of their employment. Guidant has, at all applicable times, effective control over the activities of its officers and employees, including their Plan-related activities. Through its Board of Directors (the "Directors") and/or senior management,

5

Guidant had the authority and discretion to hire and terminate said officers and employees. Guidant also had the responsibility, authority and discretion to appoint, monitor, and remove officers and employees from their individual fiduciary roles with respect to the Plans. By failing to properly discharge their duties under ERISA, the Directors, officers and employee fiduciaries breached duties they owed to participants of the Plans and their beneficiaries. Accordingly, the actions of the various Plan officers and/or managers or administrators and other employee fiduciaries are imputed to Guidant under the doctrine of *respondeat superior*, and Guidant is liable for these actions.

**Director Defendants**

17. Defendant Ronald W. Dollens ("Dollens") has been Chairman of the Board of Directors ("Board") and Chief Executive Officer ("CEO") of Guidant during the Class Period, and a director of Guidant since 1994. As such, Dollens was intimately familiar with and/or involved in the multiple instances of misconduct alleged herein. Dollens was a fiduciary of the Plans within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plans and/or management and disposition of the Plans' assets, including, *inter alia*, responsibility for the selection, monitoring and removal of administrators and other fiduciaries of the Plans.

18. Defendant James G. Cornelius ("Cornelius"), has served on the Board of Guidant since 1994. Cornelius was a fiduciary of the Plans within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plans and/or management and disposition of the Plans' assets, including, *inter alia*, responsibility for the selection, monitoring and removal of the members of the Plan Committee and Administrators of the Plans.

6

19. Defendant Maurice A. Cox, Jr. ("Cox") has served on Board of Guidant since 1995. Cox was a fiduciary of the Plans within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plans and/or management and disposition of the Plans' assets, including, *inter alia*, responsibility for the selection, monitoring and removal of administrators and other fiduciaries of the Plans.

20. Defendant Nancy-Ann Min DeParle ("DeParle") has served on Board of Guidant since 2001. DeParle was a fiduciary of the Plans within the meaning of ERISA in that she exercised discretionary authority with respect to management and administration of the Plans and/or management and disposition of the Plans' assets, including, *inter alia*, responsibility for the selection, monitoring and removal of administrators and other fiduciaries of the Plans.

21. Defendant Enrique C. Falla ("Falla") has served on Board of Guidant since 1995. Falla was a fiduciary of the Plans within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plans and/or management and disposition of the Plans' assets, including, *inter alia*, responsibility for the selection, monitoring and removal of administrators and other fiduciaries of the Plans.

22. Defendant Michael Grobstein ("Grobstein") has served on Board of Guidant since 1999. Grobstein was a fiduciary of the Plans within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plans and/or management and disposition of the Plans' assets, including, *inter alia*, responsibility for the selection, monitoring and removal of administrators and other fiduciaries of the Plans.

23. Defendant Kristina M. Johnson ("Johnson") has served on Board of Guidant since 2004. Johnson was a fiduciary of the Plans within the meaning of ERISA in that she exercised

7

discretionary authority with respect to management and administration of the Plans and/or management and disposition of the Plans' assets, including, *inter alia*, responsibility for the selection, monitoring and removal of administrators and other fiduciaries of the Plans.

24. Defendant J.B. King ("King") has served on the Board of Guidant since 1994. King was a fiduciary of the Plans within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plans and/or management and disposition of the Plans' assets, including, *inter alia*, responsibility for the selection, monitoring and removal of administrators and other fiduciaries of the Plans.

25. Defendant J. Kevin Moore ("Moore") has served on the Board of Guidant since 1995. Moore was a fiduciary of the Plans within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plans and/or management and disposition of the Plans' assets, including, *inter alia*, responsibility for the selection, monitoring and removal of administrators and other fiduciaries of the Plans.

26. Defendant Mark Novitch ("Novitch") has served on the Board of Guidant since 1995. Novitch was a fiduciary of the Plans within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plans and/or management and disposition of the Plans' assets, including, *inter alia*, responsibility for the selection, monitoring and removal of administrators and other fiduciaries of the Plans.

27. Defendant Jack A. Shaw ("Shaw") has served on the Board of Guidant since 2004. Shaw was a fiduciary of the Plans within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plans and/or management and

8

disposition of the Plans' assets, including, *inter alia*, responsibility for the selection, monitoring and removal of administrators and other fiduciaries of the Plans.

28.     Defendant Eugene L. Step ("Step") has served on the Board of Guidant since 1995. Step was a fiduciary of the Plans within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plans and/or management and disposition of the Plans' assets, including, *inter alia*, responsibility for the selection, monitoring and removal of administrators and other fiduciaries of the Plans.

29.     Defendant Ruedi E. Wager ("Wager") has served on the Board of Guidant since 1995. Wager was a fiduciary of the Plans within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plans and/or management and disposition of the Plans' assets, including, *inter alia*, responsibility for the selection, monitoring and removal of administrators and other fiduciaries of the Plans.

30.     Defendant August M. Watanabe ("Watanabe") has served on the Board of Guidant since 1995. Watanabe was a fiduciary of the Plans within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plans and/or management and disposition of the Plans' assets, including, *inter alia*, responsibility for the selection, monitoring and removal of administrators and other fiduciaries of the Plans.

**The Administrators of the Plans**

31.     Plan Administrators, *inter alia*, maintain participant account records and instruct the Trustee to execute transactions, such as benefit payments to participants of 401(k) Plans and ESOPs.

9

32.     The 401(k) and ESOP Plan Administrators are fiduciaries within the meaning of ERISA in that they exercise discretionary authority with respect to management and administration of the Plans.

33.     While the identity of the 401(k) and ESOP Plan Administrators during the Class Period are currently unknown to Plaintiff, once their identities are ascertained, Plaintiff will seek leave to join them under their true names.

**Unknown Fiduciaries**

34.     There are other fiduciaries of the both the 401(k) Plan and ESOP whose identities are currently unknown to Plaintiff. Once their identities are ascertained, Plaintiff will seek leave to join them under their true names.

35.     Defendants include named and de facto fiduciaries with respect to the Plans. All Defendants exercised discretionary authority or control regarding management of the Plans, management of the Plans' assets, and/or administration of the Plans.

## THE PLANS

36.     The 401(k) Plan and ESOP are "employee pension benefit plans," as defined by §3(2)(A) of ERISA, 29 U.S.C. §1002(2)(A). The Plans are legal entities which can sue or be sued. ERISA §502(d)(1), 29 U.S.C. §1132(d)(1). However, in a breach of fiduciary duty action such as this, the Plans are neither a plaintiff nor a defendant. Rather, pursuant to ERISA §409, 29 U.S.C. §1109, and the law interpreting it, the relief requested in this action is for the benefit of the Plans. In other words, Plaintiff in this action seeks relief on behalf of the Plans.

37.     As noted above, Guidant is the Sponsor of the Plans. As such, Guidant and its officers and Directors, are intimately involved in the administration of the Plans and investment of

Plan assets. At a minimum, the Defendants -- fiduciaries who were charged with the reasonable and prudent management and/or administration of the Plans -- knew that a significant portion of Plan assets, namely Guidant stock held by the ESOP, were materially at risk due to the improper and illegal conduct regarding the manufacture, sale and risk profiles of multiple defibrillator products, directed by Company senior management and occurring at Guidant during the Class Period, as described herein.

38. Under the 401(k) Plan, participants may contribute through payroll deductions a percentage of their salary, on a pre-tax basis. The Company makes matching contributions up to a pre-determined percentage. In addition, the Company makes fixed contributions. Both the matching and fixed contributions, all made in Guidant common stock, are made into employee accounts in the ESOP.

39. The value of Guidant common stock held by the Plans was materially inflated during the Class Period as a result of the improper and/or illegal conduct detailed herein.

## DEFENDANTS' FIDUCIARY STATUS

40. During the Class Period, upon information and belief, as detailed herein, Defendants had discretionary authority with respect to the management of the Plans and/or the management or disposition of the Plans' assets.

41. During the Class Period, the Defendants acted as fiduciaries of the Plans pursuant to §3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A), and the law interpreting that section.

42. Instead of delegating all fiduciary responsibility for the Plans to external service providers, Guidant chose to internalize its respective fiduciary functions. As alleged herein, under the circumstances present during the Class Period, this decision reflected conflicts of interests

11

resulting in the breach of these Defendants' fiduciary duties to the Plans and their beneficiaries. As detailed herein, the purpose of the improper and illegal misconduct herein alleged was to deceive the market as to the true lack of safety and efficacy of Guidant's defibrillator products, and to minimize disclosure of the true risks of their use to physicians and patients. This misconduct had the concomitant and reasonably known and intended further effect of significantly artificially increasing and inflating Guidant's common stock price over the Class Period.

### Each Defendant's Fiduciary Status

#### A.     Guidant

43.     During the Class Period, Guidant held ultimate fiduciary responsibility for and authority over the administration of the Plans and the investment of Plan assets. Guidant retained the right to terminate or amend the Plans, in whole or in part, at any time and for any reason it deemed advisable. Guidant wielded its fiduciary authority both directly through its primary executive arm, its Board of Directors, and through the appointment, removal and monitoring of the performance of its fiduciary delegates such as the Plan Administrators.

#### B.     Guidant Director Defendants

44.     The Board of Directors during the Class Period was directly responsible for the appointment, monitoring and removal of personnel with direct fiduciary responsibility for the running of the Plans. These included *inter alia* appointment and/or direct oversight over and the responsibility to monitor key fiduciary administrators of the Plans.

#### C.     The Administrators of the Plans

45.     ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan." §402(a)(1), 29

12

U.S.C. §1102(a)(1). Thus, both the 401(k) Plan and the ESOP were controlled and managed by fiduciaries appointed and overseen by the Board.

46.     Management and administration of the ESOP and the 401(k) Plan rested in the hands of Plan Administrators. These Plan Administrators were thus a fiduciaries of the both the ESOP and the 401(k) Plan.

47.     Plan Administrators had the power and discretion to determine issues arising out of or in connection with the provisions and/or the administration of the ESOP and the 401(k) Plan, and the investment of Plan assets.

### E.      Additional Fiduciary Responsibilities

48.     ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under §402(a)(1), but also any other persons who act in fact as fiduciaries, *i.e.*, perform fiduciary functions. Section 3(21)(A)(i) of ERISA, 29 U.S.C. §1002(21)(A)(i), provides that a person is a fiduciary "to the extent ... he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management of disposition of its assets ... ." During the Class Period, Defendants performed fiduciary functions under this standard, and thereby also acted as fiduciaries under ERISA for both the 401(k) Plan and the ESOP.

### CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following class of persons similarly situated (the "Class"):

> All persons who were participants in or beneficiaries of the Guidant
> 401(k) Plan and/or ESOP at any time between January 1, 2003 and

June 24, 2005 (the "Class Period") and who held, purchased, acquired

or had contributed Guidant common stock to their plan accounts

during that period.

50.      The members of the Class are so numerous that joinder of all members is

impracticable. While the exact number of Class members is unknown to Plaintiff at this time, and

can only be ascertained through appropriate discovery, Plaintiff believes there are, at a minimum,

thousands of members of the Class who participated in, or were beneficiaries of, the Plans and

acquired and/or held Guidant common stock pursuant to the Plans during the Class Period.

51.      Common questions of law and fact exist as to all members of the Class and

predominate over any questions affecting solely individual members of the Class. Among the

questions of law and fact common to the Class are:

> a.      whether Defendants each owed a fiduciary duty to Plaintiff and members of
> the Class;
>
> b.      whether Defendants breached their fiduciary duties to Plaintiff and members
> of the Class by failing to act prudently and solely in the interests of the Plans'
> participants and beneficiaries;
>
> c.      whether Defendants violated ERISA; and
>
> d.      whether the members of the Class have sustained damages and, if so, what is
> the proper measure of damages.

52.      Plaintiff's claims are typical of the claims of the members of the Class because

Plaintiff and the other members of the Class each sustained damages arising out of the Defendants'

consistent and long-standing breaches of their fiduciary duties to the Plans and Plan participants as

complained of herein.

14

53.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action, complex, and ERISA litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

54.     Class action status in this ERISA action is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

55.     Class action status is also warranted under the other subsections of Rule 23(b) because: (i) prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants; (ii) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole; and (iii) questions of law or fact common to members of the Class predominate over any questions affecting only individual members and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

## DEFENDANTS' MISCONDUCT

56.     Implantable defibrillators have long constituted a principle revenue source for Guidant, accounting for 32% of 2002 total revenue of $3.1 billion, 41% of 2003 total revenue of $3.6 billion, and 47% of 2004 total revenue of $3.8 billion. According to the Company's 2004 Form 10-K for the year ended December 31, 2004 (filed with the SEC on or about February 2, 2005), implantable defibrillator systems are used "to detect and treat abnormally fast heart rhythms

15

(tachycardia) that could result in sudden cardiac death (SCD), including implantable cardiac resynchronization therapy defibrillator (CRT-D) systems used to treat heart failure." Press reports have disclosed that cardiac resynchronization therapy, or C.R.T., devices make up 40 percent to 50 percent of Guidant's defibrillator sales, and that C.R.T. devices are the fastest-growing part of the defibrillator market, which is expanding 20 percent annually. Guidant's heart device division was a major attraction to Johnson & Johnson, which agreed to acquire Guidant in a deal announced in December 2004, valued at 25.4 billion, in large measure because it wants to expand its presence in the heart device business.

57.    As Guidant admits in its 2004 Form 10-K:

> The medical technology industry is highly competitive and is characterized by rapid product development and technological change. In order to remain competitive with other developers of medical devices and other therapies, Guidant must continue to develop and acquire cost-effective new products and technologies. Similarly, significant shifts in market share have occurred in connection with production, regulatory, safety, and other concerns, reflecting the importance of product quality. Guidant's primary competitors for implantable cardiac rhythm management devices are Medtronic, Inc. (Medtronic) and St. Jude Medical, Inc. (St. Jude).

58.    In addition, the Company faced stringent regulatory pressures. The 2004 Form 10-K further discloses that:

16

The Company is also required to register with the FDA as a device manufacturer. As a result, the Company is subject to periodic inspection by the FDA for compliance with the FDA's Quality System Regulation requirements and other regulations. In the European Community, the Company is required to maintain certain International Organization for Standardization (ISO) certifications in order to sell product and it undergoes periodic inspections by notified bodies to obtain and maintain these certifications. These regulations require the Company to manufacture products and maintain documents in a prescribed manner with respect to design, manufacturing, testing and control activities. Further, the Company is required to comply with various FDA and other agency requirements for labeling and promotion. The Medical Device Reporting regulations require that the Company provide information to the FDA whenever there is evidence to reasonably suggest that a device may have caused or contributed to a death or serious injury or, if a malfunction were to occur, could cause or contribute to a death or serious injury. In addition, the FDA prohibits the Company from promoting a medical device for unapproved indications.

59.    As such, throughout the Class Period, the Defendants faced tremendous pressure to maintain and expand market share for their various medical devices, in particular their defibrillator

17

products, as well as to keep the FDA and other regulatory agencies satisfied regarding the efficacy and safety of their devices.

60.     In the face of these intense regulatory and competitive pressures, the Defendants, as directors and/or senior executives of the Company, knew or should have known that over a three year period, the Company had evidence that it faced serious problems with certain of its defibrillators. Specifically, the Defendants knew or should have known that the Ventak Prizm 2 Model 1861, a unit implanted under the skin and designed to shock an erratic heart back into normal rhythm, suffered from potential short-circuiting.

61.     Knowledge of the existence and seriousness of these problems in-house at Guidant was wide spread. In fact, it was in response to these problems that the Company specifically redesigned the Prizm 2 device in April 2002 in an effort to reduce its potential for failure.

62.     Guidant, however, not only failed to disclose the existence of this serious problem to either physicians or the public, it continued to sell the defective, pre-April 2002 devices. As *The New York Times* reported on June 3, 2005:

> The Food and Drug Administration is examining the Guidant Corporation's decision to sell older heart defibrillators after the company made an improved version that it says fixed a potential flaw, an agency spokeswoman said yesterday.
> The inquiry is part of the broader agency review started last week into how Guidant handled issues related to the device, said the spokeswoman, Julie Zawisza. Guidant acknowledged late Wednesday that it continued to sell older units of the device well after it produced an improved version that appeared to fix the flaw.
>
> *     *     *
>
> Last week, Guidant, based in Indianapolis, said that it had not told doctors and patients for three years that it had made changes in 2002 to the Model 1861 to reduce the device's potential of short-circuiting and failing.

18

The company said then that it knew of 26 cases in which the device had failed because of the electrical flaw, including the death of a 21-year-old college student last March. All the failures occurred in units made before April 2002, when a fix was made. About 37,000 units had been made by then, and the company estimates that 24,000 people still use one.

* * *

Late Wednesday, after being told that The New York Times was preparing an article on the issue, Guidant acknowledged that it had continued to sell the older, potentially flawed devices after the improved versions were available.

63.     Over the next several weeks, Guidant's long-term efforts to hide both the existence and scope of its defibrillator device problems from the public began to unravel.  A triggering event for this process was the death in March of a college student.  It wasn't until after this student's death that doctors in Minneapolis first learned from Guidant that the Prizm 2 defibrillator they had implanted in him in 2001 had a history of electrical failures related to a design flaw. *The New York Times* reported on June 18 that:

The physicians, who had been treating Mr. Oukrop for a genetic heart disease that put him at risk of sudden cardiac arrest, said they urged Guidant at that time to notify other doctors. But company officials said they did not plan to do so because they did not see the problem as significant. The company did send a letter to doctors about the device in late May just as The New York Times was publishing an article about the Prizm 2.

In the aftermath, the F.D.A. began reviewing Guidant's handling of the matter. It was during that process that agency officials began to look at the Renewal devices, said Mr. Ulatowski, the F.D.A. official. "We always inquire whether a problem caused by a design problem in one product might exist in other products," he said.

Mr. Ulatowski added that Guidant, through a filing, had notified the F.D.A. about manufacturing changes it made last August to correct a short-circuiting problem in the Renewal models.

19

However, only during recent reviews did the agency become aware of
the scope of the problem. While Guidant previously received 14
reports of electrical failures in Renewal devices produced before
August, it received a report on May 30 of the death of a patient who
had been implanted with a unit that failed in a similar way.
It also appears that Guidant may have continued to sell older Renewal

models in its inventory after improved versions were available, as it

had done with the Prizm 2 defibrillator. Yesterday, Guidant officials

declined to comment about the issue.

64.     *The New York Times* article went on to note that under agency guidelines, Guidant

was required to undertake an internal assessment of the patient risks posed by the device's electrical

problems once it discovered them. The Company was aware that certain of its defibrillator models

had failed at least 45 times and that two individuals with the devices had died because of problems

linked to the devices.

65.     As a result of the public outcry and pressure from the FDA that followed the various

press reports of Guidant's long-standing but never disclosed design problems with certain of its

defibrillators, on June 17, the Company was forced to recall about 29,000 of these implanted heart

devices. At first, this recall involved three models of defibrillators: the Prizm 2 DR, and the Contak

Renewal and Contak Renewal 2, both of which are more complex devices intended for patients with

severe heart failure. As *The New York Times* noted:

> But yesterday's disclosure that Guidant also knew that other popular
> company models beside the Prizm 2 were prone to short-circuiting
> raises further questions about how the company handled such issues.
> An F.D.A. official also questioned whether Guidant had acted
> properly when it recently rushed out a letter to doctors notifying them
> that the Prizm 2 had short-circuited in over 25 known cases, including
> the March death of a 21-year-old student.

20

> The company took the action late last month when it became aware
> that problems with the device, which date back to 2002, were going to
> be publicized in other forums.
> Tim Ulatowski, the director of the agency's Center for Devices and
>
> Radiological Health, said Guidant should have treated the matter as a
>
> recall at that time.

66.    *USA Today* reported on June 21 that Guidant was recalling about 50,000 faulty

implantable defibrillators, about 29,000 devices due to wiring with flawed insulation that was prone

to deteriorate, which could cause them to short-circuit, and about 21,000 devices due to a

programming error that prevents them from responding to certain rhythm abnormalities. The article

reported that the FDA warned in an advisory on June 17 that this latter defect "could lead to a

serious, life-threatening event."

67.    On June 24, the Company issued a second safety advisory in a week about its

implantable defibrillators, warning doctors to stop using five of its other models because a faulty

switch could cause them to malfunction. The five devices included in this latest announcement were

the Contak Renewal 3 and 4, Renewal 3 and 4 AVT, and Renewal RF.  Guidant stated that about

46,000 of these devices were in use, and that doctors "should discontinue implants of these devices

pending further notice."  The Company revealed that these additional five models have a magnetic

switch that can become stuck in a closed position, preventing the device from treating irregular heart

rhythms. The faulty switch can also limit a defibrillator's battery life.  This raised to a total of ten

(10) the number of devices Guidant now disclosed as being flawed and dangerous to use:

> Defibrillator models recalled:  Ventak Prizm 2 DR Model
>
> 1861 manufactured on or before April 16, 2002; Contak Renewal

21

Model H135 and Contak Renewal 2 Model H155 CRT-D's

manufactured on or before Aug. 26, 2004; Ventak Prizm AVT,

Vitality AVT, Renewal 3 AVT and Renewal 4 AVT ICD's, all serial

numbers.

> Defibrillator models whose use has been halted: Contak

Renewal 3 and 4, Renewal 3 and 4 AVT and Renewal RF.

68. With these defibrillators added to the list of recalled devices, at least 74,900

defibrillators manufactured by Guidant are now under a company warning. As the result of these

disclosures, the Company's stock price tumbled 9.2 percent, or $6.30, to $62.30 in morning trading

on the New York Stock Exchange.

69. *The New York Times* reported on June 25, 2005 that:

> The Guidant Corporation, already under scrutiny for delaying
> disclosures about flawed products, urged doctors yesterday to stop
> implanting its most sophisticated heart devices because of a fault that
> might cause some of the 40,000 units already implanted not to work
> properly.
> The move could have significant financial consequences for Guidant
>
> because it affects, for now, sales of many of the company's heart
>
> devices in the fastest-growing part of the market: advanced
>
> defibrillators that also act as pacemakers for both sides of the heart.

> \* \* \*

> Guidant's problems began in late May, when it was disclosed that the
> company, based in Indianapolis, had not told doctors for three years
> that one type of its defibrillators had repeatedly failed because of an
> electrical defect. A defibrillator emits an electrical jolt that shocks a
> chaotically beating heart back into rhythm.

Since then, the device maker has been buffeted by bad publicity because it has been forced to make repeated announcements about other device-related defects. Late last week, under pressure from the Food and Drug Administration, Guidant recalled 50,000 defibrillators, with thousands of them at risk of potentially short-circuiting just when needed to produce a life-saving shock.

"One thing that distinguishes this recall from others is the time gap from when it was discovered and when it was disclosed," said Alexander Arrow, an industry analyst with Lazard. "It points to a corporate response that looks inappropriate, so that it potentially has more staying power on the reputational level."

70.    The article went on to find that:

Yesterday's announcement by Guidant affects several models: the Contak Renewal 3; Contak Renewal 4; Contak Renewal 3 and 4 AVT; and the Renewal RF. The company said it had received four reports of flawed switches among the 40,000 units implanted.

However, the financial impact on Guidant could be substantial, at least in the short term, because the affected models appear to involve many of the company's advanced defibrillators. The use of such devices, which cost about $25,000 each, is growing rapidly in part because Medicare has greatly increased the number of older patients for whom it will pay for such devices. The units are used in patients who are at risk of cardiac arrest and have other heart problems.

\*   \*   \*

The company did not say how it planned to fix the problem, when it expected to do so or how it would fix units already implanted in patients. If a significant change must be made in the way units are made, the change could require F.D.A. approval before Guidant could make new units.

23

71.     The importance of defibrillators in general, and the cardiac resynchronization therapy,

or C.R.T., devices (the type of device that was the subject of Guidant's second recall warnings) in

specific, to Guidant's bottom line is critical. *The New York Times* noted that:

> Guidant does not break out its sales by model types, but last year,
> defibrillator sales accounted for nearly 50 percent of its revenue of
> $3.8 billion. Analysts said they thought the types of models involved
> in yesterday's alert, which are known as cardiac resynchronization
> therapy, or C.R.T., devices, made up 40 percent to 50 percent of its
> defibrillator sales.
> C.R.T. devices are the fastest-growing part of the defibrillator market,
>
> which is expanding 20 percent annually. Guidant's heart device
>
> division was a major attraction to Johnson & Johnson, which wants to
>
> expand its presence in the device business.

72.     The scope of the FDA's investigation has continued to expand as the Company has

been forced to make additional disclosures of problems with other devices. In a July 2, 2005 article,

*The New York Times* reported that the FDA made an announcement about the device recalls on July

1:

> In its announcement, the F.D.A. designated three models recently
> recalled by Guidant as "Class I" actions, the highest risk level. It also
> designated eight other models as "Class II" recalls, or those posing a
> less serious risk.
> F.D.A. officials also said the agency was continuing its investigation
> into how the company assessed and disclosed those product dangers.
> In the past, such inquiries have led, in some cases, to actions ranging
> from consent decrees to civil fines to criminal inquiries. Effectively,
> yesterday's decision by the F.D.A. is a rebuke to Guidant.
>
> \*   \*   \*
>
> From a practical standpoint, Guidant had already treated its recent
> recalls of the three models as a Class I action by issuing news releases
> about the problem and sending letters to doctors with lists of patients

24

who received the device. A manufacturer conducting a Class I recall must attempt to alert as many affected parties as possible.

But a former associate F.D.A. chief counsel in the 1970's, William W. Vodra, said that the agency's continuing review of how Guidant treated patient risks posed by devices like the Prizm 2 DR could have a far more significant impact than how a recall is classified.

Such reviews can potentially lead to consent orders, fines or even criminal investigations, said Mr. Vodra, who is now a lawyer in private practice in Washington, D.C.

A Guidant spokesman, Steven Tragash, declined to comment when asked whether Guidant had received any subpoenas or information requests from any governmental agency related to the company's defibrillators.

The F.D.A.'s review of Guidant's actions will likely last several weeks, an agency official said. But the inquiry may inject another element of uncertainty into Johnson & Johnson's planned $25.4 billion merger with Guidant, the nation's second-largest maker of implantable heart devices.

## Guidant's Common Stock Has Suffered Materially from the Disclosure of the True Operational, Litigation and Economic Risks the Company Faces

73.     Over the course of the repeated disclosures outlined above, Guidant's common stock price has suffered materially.  Following the first announcement on June 17, the Company's stock price dropped $3.36, or almost 5%, from a close of $73.37 on Thursday, June 16, to $70.30 on Monday, June 20, with an unprecedented over 25.5 million shares being traded.  Following the second announcement on June 24, the stock price fell another $4.70, from $68.60 on Friday, June 23 to $63.90, on Monday, June 27, based on almost 50 million shares traded.  If Johnson & Johnson either cuts the price of its offer for Guidant or walks away from the deal altogether because of these problems, the damage suffered by the Plans and Plan participants will further increase substantially.

25

74.     As set forth above, throughout the Class Period, Defendants knew or were reckless or negligent in not knowing that the Company's stock price was artificially inflated based on the facts as alleged herein.

**Defendants Knew Or Should Have Known That**
**Guidant Common Were Not Prudent Plan Investments**

75.     At all relevant times, Defendants, in their capacity as directors and/or senior executives of the Company, knew or should have known that Guidant was engaged in the improper and/or illegal practices of manufacturing and/or marketing known defective or suspect defibrillator devices -- with potentially fatal health risks to patients -- without making appropriate disclosure to regulators, or making any disclosure to physicians, Plan participants or the public. These long-term problems, and the Company's failure to adequately and appropriately disclose their existence, made Guidant common stock an imprudent Plan investment during the Class Period.

76.     At a minimum, Guidant, the Director Defendants, and Plan Administrators breached their fiduciary duties by failing reasonably and properly to take into account these material adverse factors that put Guidant stock at risk, as well as the fact that Guidant stock was inflated in value when determining the prudence of continuing to invest and hold Plan assets in Guidant common stock.

77.     As a result of Defendants' knowledge (or reckless or negligent disregard) of and, at times, knowing or tacit participation in creating and maintaining public misconceptions concerning the true safety status of the Company's principal products, any generalized warnings of market and diversification risks that Guidant made to Plan participants did not effectively or reasonably inform

26

them of the true and known past, immediate, and future dangers of their investments in Company stock during the Class Period.

78. In addition, named and unnamed Defendants, as fiduciaries responsible for monitoring the investment of assets of the Plans, failed to adequately review the performance of Plan Administrators and other fiduciaries to ensure that they were fulfilling their fiduciary duties to Plan participants under the Plans and ERISA.

79. The Company, the Director Defendants, Plan Administrators, and other unnamed Plan fiduciaries breached their fiduciary duties by failing to conduct an appropriate investigation into whether Guidant stock was a prudent investment for the Plans and, in connection therewith, failing to provide Plan participants with reasonable and accurate information regarding Guidant's improper activities so that participants could remain reasonably informed regarding the acquisition and holding of Guidant stock in the ESOP, or otherwise failing to reasonably and appropriately protect the Plans and their participants against inevitable losses.

80. In light of the material adverse facts which Defendants knew or should haven known, any reasonable and adequate investigation by Defendants would have revealed to a reasonable fiduciary that continuing to permit investments of Guidant common stock in the ESOP under these circumstances, was imprudent. A prudent fiduciary acting under similar circumstances would have acted to protect participants of the Plans against unnecessary losses, and would have made different investment decisions.

81. Because Defendants knew or should have known that Company stock was not a prudent investment option for the Plans, they had an obligation to protect the Plans and their participants from the losses incurred as a result of the Plans' continued investment in Company

common stock. Their failure to do so constituted a clear breach of their fiduciary duty to the Plans and to participants in the Plans.

82.     Defendants had available to them several different options for satisfying this duty, including: making appropriate public disclosures as necessary; refusing to purchase additional common stock until assured that the wrongdoing at the Company had ceased and all necessary public disclosures had occurred, divesting the matching and fixed contributions beyond just Company stock; consulting independent fiduciaries regarding appropriate measures to take in order to prudently and loyally serve the participants of the Plans; or resigning as fiduciaries of the Plans to the extent that as a result of their employment by the Company they could not loyally serve participants in the Plans in connection with the Plans' continued acquisition and holding of Company common and/or preference stock.

83.     Despite the availability of these and other reasonable options, Defendants, in breach of their fiduciary duties, failed to take any action to protect participants from losses as a result of Plan investments in Guidant stock during the Class Period.

**Defendants Communicated With Plan Participants**
**Concerning Guidant Stock Offered By The Plan, Yet Failed**
**To Disclose The Imprudence Of Investment In Company Stock**

84.     Upon information and belief, the Company communicated with employees, including participants in the 401(k) Plan, about the performance, future financial and business prospects of the Company's common stock, a substantial asset of the ERISA Plans. During the Class Period, the Company fostered a positive attitude toward the Company's stock by not disclosing negative material information they knew or should have known concerning investment in the Company's stock. As

28

such, participants in the Plans could not appreciate the true risks presented by investments in the Company's stock.

85.    As noted above, these SEC filings and related Company statements and releases were inaccurate, incomplete and materially misleading, causing Plan participants not to fully or reasonably understand the true risks inherent in the Plans' continued purchase and retention of Plan investments in Guidant Stock. The Defendants thus knew, intended or understood that these inaccurate, incomplete and materially misleading representations were being directed to and received by Plan participants.

86.    The Company, the Director Defendants, the Plan Administrators, and or the Plan's other individual fiduciaries breached their fiduciary duties by, *inter alia*, failing to provide Plan participants with complete and accurate information regarding the problems with the Company's defibrillator devices, and the concomitant adverse impact those problems had on artificially inflating the value of Guidant's common stock, such that the participants could reasonably, adequately and accurately appreciate the true risks presented by massive Plan investments in Guidant stock.

## CLAIMS FOR RELIEF UNDER ERISA

87.    At all relevant times, Defendants were and acted as fiduciaries within the meaning of ERISA §3(21)(A), 29 U.S.C. §1002(21)(A).

88.    ERISA §502, 29 U.S.C. §1132, provides, in pertinent part, that a civil action may be brought by a participant for relief under ERISA §409, 29 U.S.C. §1109.

89.    ERISA §409(a), 29 U.S.C. §1109(a), "Liability for Breach of Fiduciary Duty," provides, in pertinent part, that any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally

liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

90. ERISA §404(a)(1)(A) and (B), 29 U.S.C. §1104(a)(1)(A) and (B), provides, in pertinent part, that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and their beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

91. These fiduciary duties under ERISA §404(a)(1)(A) and (B) are referred to as the duties of loyalty, exclusive purpose and prudence and are the "highest known to the law." They entail, among other things,

a. The duty to conduct an independent and thorough investigation into, and continually to monitor, the merits of all the investment alternatives of a plan, including in this instance Company stock, to ensure that each investment is a suitable option for the plan; and

b. A duty to disclose and inform, which encompasses: (i) a negative duty not to misinform; (ii) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (iii) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.

30

92.   ERISA §405(a), 29 U.S.C. §1105(a), "Liability for breach by co-fiduciary," provides,

in pertinent part, that:

> "... in addition to any liability which he may have under any other
> provision of this part, a fiduciary with respect to a plan shall be liable
> for a breach of fiduciary responsibility of another fiduciary with
> respect to the same plan in the following circumstances: (A) if he
> participates knowingly in, or knowingly undertakes to conceal, an act
> or omission of such other fiduciary, knowing such act or omission is a
> breach; (B) if, by his failure to comply with section 404(a)(1), 29
> U.S.C. §1104(a)(1), in the administration of his specific
> responsibilities which give rise to his status as a fiduciary, he has
> enabled such other fiduciary to commit a breach; or (C) if he has
> knowledge of a breach by such other fiduciary, unless he makes
> reasonable efforts under the circumstances to remedy the breach."

93.   Plaintiff therefore brings this action under the authority of ERISA §502 for Plan-wide

relief pursuant to ERISA §409(a) to recover losses sustained by the Plans arising out of the breaches

of fiduciary duties by the Defendants.

## CAUSATION

94.   The Plans suffered millions of dollars in losses because substantial assets of the Plans

were imprudently allowed to be put at great risk by Defendants, through investment by the Plans in

Guidant stock during the Class Period, in breach of Defendants' fiduciary duties. The Company's

2004 Form 10-K reported that as of December 31, 2004, Guidant had approximately 7.1 million

shares of Company common stock allocated to employee accounts, and an additional approximately

1.9 million shares of unallocated shares in its ESOP.

95.   Defendants are responsible for losses caused by this investment in Guidant stock

because Defendants breached their fiduciary duties by, *inter alia*, concealing material, adverse, non-

public facts from participants, and providing misleading, inaccurate, and incomplete information to

31

them regarding the true nature of the Company's illicit activities, and therefore the real ongoing potential business, legal, operational and profit risks the Company faced, as well as the true underlying value of Guidant stock offered by the Plans, misrepresenting its soundness as investment vehicles. As a consequence, Plan participants were materially injured as the result of such imprudent investment decisions made in breach of Defendants' fiduciary duties, and Defendants remain liable under ERISA for losses caused by such investment.

96.     Had the Defendants reasonably and properly discharged their fiduciary and/or co-fiduciary duties, including adequately monitoring appointees and the provision of full and accurate disclosure of material facts concerning investment in Guidant stock and divesting the Plan of Company stock offered by the ESOP when maintaining such an investment alternative became imprudent, the Plans would have avoided a substantial portion of the losses that they suffered through the ESOP's continued investment in Guidant common stock.

97.     Moreover, had the Defendants properly discharged their fiduciary and/or co-fiduciary duties, including the provision of full and accurate disclosure of material facts concerning the massive investment in Guidant stock mandated by the ESOP, eliminating this investment alternative when it became imprudent, and divesting the ESOP from any then-existing investments in this stock when maintaining such an investment became imprudent, the Plans would have avoided a substantial portion of the losses that they suffered through such continued tainted investment.

## COUNT I

### Failure to Prudently and Loyally Manage Plan Assets
### (Breaches of Fiduciary Duties in Violation of
### ERISA §404 By All Defendants)

98.     Plaintiff incorporates the allegations contained in the previous paragraphs of this complaint as if fully set forth herein.

99.     At all relevant times, as alleged above, the Defendants were fiduciaries within the meaning of ERISA §3(21)(A), 29 U.S.C. §1002(21)(A).

100.     As alleged above the Defendants were all responsible, in different ways and to differing extents, for the selection, maintenance and monitoring of the Plans' investment options, including the decision to invest Company matching and fixed contributions solely in Guidant common stock.

101.     Under ERISA, fiduciaries who exercise discretionary authority or control over management of a plan or disposition of a plan's assets are responsible for ensuring that investment options made available to participants under a plan are prudent. Furthermore, such fiduciaries are responsible for ensuring that assets within the plan are prudently invested. The Defendants were responsible for ensuring that all investments in the 401(k) Plan and the ESOP were prudent, and are liable for losses incurred as a result of such investments being imprudent.

102.     Moreover, a fiduciary's duty of loyalty and prudence require it to disregard plan documents or directives that it knows or reasonably should know would lead to an imprudent result or would otherwise harm plan participants or beneficiaries. ERISA §404(a)(1)(D), 29 U.S.C. §1104(a)(1)(D). Thus, a fiduciary may not blindly follow plan documents or directives that would lead to an imprudent result or that would harm plan participants or beneficiaries, nor allow others, including those whom they direct or who are directed by the plan to do so.

103.     The Defendants breached their duties to prudently and loyally manage the Plans' assets. During the Class Period these Defendants knew or should have known that Guidant common

33

stock was not a suitable and appropriate investment for the Plans as described herein. Nonetheless, during the Class Period, these fiduciaries continued to direct that all Company matching and fixed contributions to Plan participants be made solely in Guidant common stock. Moreover, during the Class Period, despite their knowledge or reckless or negligent disregard of the imprudence of the investment, Defendants failed to take adequate steps to prevent the Plans, and indirectly the Plans participants and beneficiaries, from suffering losses as a result of the Plans' substantial investment in Guidant common stock.

104.    The fiduciary duty of loyalty also entails a duty to avoid conflicts of interest and to resolve them promptly when they occur.  A fiduciary must always administer a plan with single-minded devotion to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

105.    The Defendants also breached their co-fiduciary obligations by, among other failures, knowingly participating in, making no effort to remedy, and/or knowingly undertaking to conceal, their fellow defendant-fiduciaries' failure to prudently and loyally manage Plans' assets in the exercise of their discretion with respect to the offering Company common and/or preference stock as investment options in the Plans, despite knowing that such failures were breaches of their ERISA-mandated fiduciary duties.

106.    Defendants named in this Count were unjustly enriched by the fiduciary breaches described in this Count.

107.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plans, and indirectly Plaintiff and the Plans' other participants and beneficiaries, lost a significant portion of their retirement investment.

34

108.   Pursuant to ERISA §502(a), 29 U.S.C. §1132(a) and ERISA §409, 29 U.S.C. §1109(a), Defendants in this Count are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count.

**COUNT II**

**Failure to Monitor Plan Administrators and Other Fiduciaries,
and Provide Them With Accurate Information
(Breaches of Fiduciary Duties in Violation of ERISA
§404 by Guidant and the Director Defendants)**

109.   Plaintiff incorporates the allegations contained in the previous paragraphs of this complaint as if fully set forth herein.

110.   At all relevant times, as alleged above, Guidant and the Director Defendants were fiduciaries within the meaning of ERISA §3(21)(A), 29 U.S.C. §1002(21)(A).

111.   At all relevant times, as alleged above, the scope of the fiduciary responsibility of Guidant and the Director Defendants included the responsibility to monitor other fiduciaries.

112.   The duty to monitor entails both giving information to and reviewing the actions of the monitored fiduciaries, including, *inter alia,* the Plan Administrators. In this case, that meant that the monitoring fiduciary, Guidant and the Director Defendants, had the duty to:

  a.   Ensure that the monitored fiduciaries possessed the needed credentials and experience, or use qualified advisors and service providers to fulfill their duties. They must be knowledgeable about the operations of the Plans, the goals of the Plans, and the behavior of Plans' participants.

  b.   Ensure that the monitored fiduciaries had ready access to such outside, impartial advisors, counsel, and experts when needed.

35

c.     Ensure that the monitored fiduciaries were provided with adequate financial resources to do their job.

d.     Ensure that the monitored fiduciaries had adequate information and to do their job of overseeing the Plans' investments.

e.     Ensure that the monitored fiduciaries maintained adequate records of the information on which they based their decisions and analysis with respect to investment options of the Plans.

f.     Ensure that the monitored fiduciaries reported regularly to the Company. The Company must then review, understand, and approve the conduct of the hands-on fiduciaries.

113.   Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment of plan assets, and must take prompt and effective action to protect the plan and participants when they are not. The duty to monitor encompasses a duty to periodically monitor the performance of the appointees so as to ensure compliance with their fiduciary duties under ERISA and the plan.

114.   The duty of prudence requires that appointing fiduciaries have procedures in place so that on an ongoing basis they may review and evaluate whether investment fiduciaries are doing an adequate job (for example, by requiring periodic reports on their work and the plan's performance, and by ensuring that they have a prudent process for obtaining the information and resources they need). In the absence of a sensible process for monitoring their appointees, the appointing fiduciaries would have no basis for prudently concluding that their appointees were faithfully and effectively performing their obligations to plan participants or for deciding whether to retain or remove them.

115.    Furthermore, a monitoring fiduciary must provide the monitored fiduciaries with complete and accurate information in their possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan and the plan assets.

116.    Guidant and the Director Defendants breached their fiduciary monitoring duties by, among other things, (i) failing to ensure that the monitored fiduciaries had access to knowledge about the Company's business improprieties alleged above, which made the Company's common stock an imprudent retirement investment, and (ii) failing to ensure that the monitored fiduciaries appreciated the risks inherent at the time under the circumstances then existing in the substantial investment in Plan participants' ESOP accounts in undiversified employer stock for both matching and fixed Company contributions. Guidant and the Director Defendants knew or should have known of the underlying problems and resultant artificial inflation of the value of Guidant common stock, and thus, that the fiduciaries they were responsible for monitoring were imprudently allowing the Company to continue contribute only Guidant common stock for both matching and fixed Company contributions when it no longer was prudent to do so, yet failed to take action to protect the participants from the consequences of these fiduciaries' failures.

117.    In addition, as a result of its inappropriate practices and implicit knowledge thereof, Guidant and the Director Defendants, in connection with their monitoring and oversight duties, were required to disclose to the monitored fiduciaries accurate information about the financial condition and practices of Guidant that they knew or should have known that these fiduciaries needed to make sufficiently informed decisions. By remaining silent and continuing to conceal such information from the other fiduciaries, Guidant and the Director Defendants breached their monitoring duties under the Plans and ERISA.

118.     Guidant and the Director Defendants are liable as a co-fiduciaries because: (i) they knowingly participated in the fiduciary breaches by their fellow defendant-fiduciaries in the activities implicated in this Count; (ii) they enabled the breaches by these defendants; and/or (iii) they had knowledge of these breaches yet failed to make any effort to remedy them.

119.     These defendants in this Count were unjustly enriched by the fiduciary breaches described in this Count.

120.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plans, and indirectly Plaintiff and the Plans' other participants and beneficiaries, lost a significant portion of their retirement investment.

121.     Pursuant to ERISA §502(a), 29 U.S.C. §1132(a) and ERISA §409, 29 U.S.C. §1109(a), defendants in this Count are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count.

## COUNT III

### Failure to Provide Complete and Accurate Information
### to Plan Participants and Beneficiaries
### (Breaches of Fiduciary Duties in Violation of §§404
### and 405 of ERISA By All Defendants)

122.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

123.     At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA §3(21)(A), 29 U.S.C.§1002(21)(A).

124.     At all relevant times, the scope of the fiduciary responsibility of the Defendants included Plan communications and material disclosures.

38

125.    The duty of loyalty under ERISA requires fiduciaries to speak truthfully to participants, not to mislead them regarding the plan or plan assets, and to disclose information that participants need in order to exercise their rights and interests under the plan. This duty to inform participants includes an obligation to provide participants and beneficiaries of the plan with complete and accurate information, and to refrain from providing false information or concealing material information regarding plan investment options, such that participants can make informed decisions with regard to the prudence of investing in such options made available under the plan. This duty applies to all Plan investment options, including investment in Guidant common stock.

126.    As alleged herein, Defendants made repeated communications in their capacity as fiduciaries to Plan participants which were false and misleading and/or materially omissive regarding material operation problems the Company was facing.

127.    Because investment in the ESOP was not diversified (*i.e.*, the Defendants chose to invest the entire portion of the Company's matching and fixed employee contributions in Guidant common stock), such investment carried with it an inherently high degree of risk. This inherent risk made the Defendants' duty to provide complete and accurate information particularly important with respect to Guidant stock.

128.    The Defendants breached their duty to inform participants by failing to provide complete and accurate information regarding Guidant common stock, Guidant's financial and business improprieties, public misrepresentations and inflated earnings, and the consequent artificial inflation of the value of Guidant common and/or preference stock and, generally, by conveying inaccurate information regarding the soundness of Guidant stock and the prudence of investing retirement contributions in Guidant stock. These failures were particularly devastating to the Plans

39

and their participants; a substantial portion of the Plans' assets were invested in Guidant common stock during the Class Period and, thus, losses in these investments had material impact on the value of participants' retirement assets.

129.   Defendants in this Count are also liable as co-fiduciaries because (i) they knowingly (or recklessly or negligently) participated in and undertook to conceal the failure of the other fiduciaries to provide complete and accurate information regarding Guidant stock, despite knowing of their breaches; (2) they enabled such conduct as a result of their own failure to satisfy their fiduciary duties; and/or (3) they had knowledge of the other fiduciaries' failures to satisfy their duty to provide only complete and accurate information to participants, yet did not make any effort to remedy the breaches.

130.   Where a breach of fiduciary duty consists of, or includes, misrepresentations and omissions material to a decision by a reasonable plan participant that results in harm to the participant, the participant is presumed as a matter of law to have relied upon such misrepresentations and omissions to his or her detriment. Here, the above-described statements, acts and omissions of the Defendants in this complaint constituted misrepresentations and omissions that were fundamentally deceptive concerning the prudence of investments in Guidant common stock and were material to any reasonable person's decision about whether such investment, especially in such material amounts, was a prudent Plan investment during the Class Period. Plaintiff and the other Class members are therefore presumed to have relied to their detriment on the misleading statements, acts, and omissions of the Defendants as described herein.

131.   Defendants in this Count were unjustly enriched by the fiduciary breaches described in this Count.

132.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the

Plans, and indirectly Plaintiff and the Plans' other participants and beneficiaries, lost a significant

portion of their retirement investment.

133.    Pursuant to ERISA §502(a)(2), 29 U.S.C. §1132(a)(2) and ERISA §409, 29 U.S.C.

§1109(a), Defendants in this Count are liable to restore the losses to the Plans caused by their

breaches of fiduciary duties alleged in this Count.

**COUNT IV**

**Breach of Duty to Avoid Conflicts of Interest**
**(Breaches of Fiduciary Duties in Violation of §§404**
**and 405 of ERISA Against All Defendants)**

134.    Plaintiff incorporates the allegations contained in the previous paragraphs of this

complaint as if fully set forth herein.

135.    At all relevant times, as alleged above, Defendants were fiduciaries within the

meaning of ERISA §3(21)(A), 29 U.S.C. §1002(21)(A).

136.    ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A), imposes on a plan fiduciary a duty

of loyalty, that is, a duty to discharge his/her duties with respect to a plan solely in the interest of the

participants and beneficiaries and for the exclusive purpose of providing benefits to participants and

its beneficiaries.

137.    Defendants breached their duty to avoid conflicts of interest and to promptly resolve

them by, *inter alia*, failing to engage independent fiduciaries who could make independent

judgments concerning the Plans' investment in the Guidant common stock; failing to notify

appropriate federal agencies, including the United States Department of Labor, of the facts and

transactions which made Guidant stock an unsuitable investment for the Plans; failing to take such

41

other steps as were necessary to ensure that participants' interests were loyally and prudently served; with respect to each of these above failures, doing so in order to prevent drawing attention to the Company's inappropriate practices; and by otherwise placing the interests of the Company above the interests of the participants with respect to the Plan's investment in Company stock.

138.   As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plans, and indirectly Plaintiff and the Plans' otherwise participants and beneficiaries, lost a significant portion of their retirement investment.

139.   Pursuant to ERISA §502(a)(2), 29 U.S.C. §1132(a)(2) and ERISA §409, 29 U.S.C. §1109(a), Defendants in this Count are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count.

## REMEDY FOR BREACHES OF FIDUCIARY DUTY

140.   The Defendants breached their fiduciary duties in that they knew or should have known the facts as alleged above, and therefore knew or should have known that the Plans' assets should not have been so heavily invested in Company common and/or preference stock.

141.   As a consequence of the Defendants' breaches, the Plans suffered significant losses.

142.   ERISA §502(a)(2), 29 U.S.C. §1132(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under ERISA §409, 29 U.S.C. §1109.  Section 409 requires "any person who is a fiduciary ... who breaches any of the ... duties imposed upon fiduciaries ... to make good to such plan any losses to the plan ... ."  Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate ... ."

143.   With respect to calculation of the losses to a plan, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the participants and beneficiaries in the

plan would not have made or maintained its investments in the challenged investment and, where alternative investments were available, that the investments made or maintained in the challenged investment would have instead been made in the most profitable alternative investment available. In this way, the remedy restores the values of the plan's assets to what they would have been if the plan had been properly administered.

144. Plaintiff and the Class are therefore entitled to relief from the Defendants in the form of: (i) a monetary payment to the Plans to make good to the Plans the losses to the Plans resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, including insider sales, as provided by ERISA §409(a), 29 U.S.C. §1109(a); (ii) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§409(a) and 502(a)(2-3), 29 U.S.C. §§ 1109(a) and 1132(a)(2-3); (iii) reasonable attorney fees and expenses, as provided by ERISA §502(g), 29 U.S.C. §1132(g), the common fund doctrine, and other applicable law; (iv) taxable costs and (v) interests on these amounts, as provided by law; and (vi) such other legal or equitable relief as may be just and proper.

145. Each defendant is jointly liable for the acts of the other defendants as a co-fiduciary.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for:

A. A Declaration that the Defendants, and each of them, have breached their ERISA fiduciary duties to participants of the Plans;

B. An Order compelling the Defendants to make good to the Plans all losses to the Plans resulting from Defendants' breaches of their fiduciary duties, including losses to the Plans resulting from imprudent investment of the Plans' assets, and to restore to the Plans all

profits the Defendants made through use of the Plans' assets, and to restore to the Plans all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations;

     C.     Imposition of a Constructive Trust on any amounts by which any Defendant was unjustly enriched at the expense of the Plans or otherwise as the result of breaches of fiduciary duty;

     D.     An Order enjoining Defendants, and each of them, from any further violations of their ERISA fiduciary obligations;

     E.     Actual damages in the amount of any losses the Plans suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses;

     F.     An Order that Defendants allocate the Plans' recoveries to the accounts of all participants who had any portion of their account balances invested in Guidant common stock maintained by the Plans in proportion to the accounts' losses attributable to the decline in the price/value of Company stock;

     G.     An Order awarding costs pursuant to 29 U.S.C. §1132(g);

     H.     An Order awarding attorneys' fees pursuant to 29 U.S.C. §1132(g) and the common fund doctrine; and

     I.     An Order for equitable restitution and other appropriate equitable monetary relief against the Defendants.

DATED: July 11, 2005

Respectfully submitted,

Kathleen A. DeLaney (#18604-49)
Local Counsel for Plaintiff

DeLaney & DeLaney LLC
3640 North Washington Blvd.
Indianapolis, IN 46205
Tel. 317.920.0400
Fx. 317.920.0404
kathleen@delaneylaw.net
www.delaneylaw.net

OF COUNSEL:

**MORRIS AND MORRIS LLC**
**COUNSELORS AT LAW**
Karen L. Morris
Patrick F. Morris
4001 Kennett Pike
Suite 300
Wilmington, DE 19807
Telephone: (302) 426-0400
Facsimile: (302) 426-0406

**LAW OFFICES OF**
**BRUCE G. MURPHY**
Bruce G. Murphy
265 Llwyds Lane
Vero Beach, FL 32963
Telephone: (828) 737-0500

45